**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittney Gault,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Charles Schwab & Company Incorporated,<br><br>　　　　　Defendant. | No. CV-23-00747-PHX-KML<br><br>**ORDER** |

　　　　Plaintiff Brittney Gault applied for a job with defendant Charles Schwab & Co., Inc. and was offered a position contingent on a background check. After Schwab uncovered inconsistencies and omissions regarding Gault's employment history but before receiving the results of a background screening from a third-party vendor, Schwab rescinded her job offer. Gault filed this complaint alleging Schwab's actions violated Title VII, the Arizona Civil Rights Act (ACRA), and the Fair Credit Reporting Act (FCRA). Schwab moved for summary judgment on all counts and its motion is granted.

**I.　　Background**

　　　　In September 2022, Gault applied for a job with Schwab as a Participant Services Associate. (Doc. 81-2 at 3.) Schwab's Talent Advisor, Orlando Salas Jr., contacted her on October 10, 2022 to schedule a screening interview. (Doc. 81-2 at 9.) During the interview, Salas asked Gault if she had been terminated by a prior employer. (Doc. 81-2 at 10.) Gault disclosed she had been terminated from Groupon and explained the termination was deemed "unjust" when she filed for unemployment benefits. (Doc. 81-2 at 10.) Gault did not disclose any other prior terminations. (Doc. 81-2 at 14, 48.) Salas

1   neglected to record Gault's Groupon termination in his interview notes. (Doc. 85-2 at 3.)

2   Gault progressed to the next stage of the application process and interviewed with Schwab hiring managers on October 19, 2022. She received a conditional job offer the next day contingent on passing a background check. (Doc. 81-2 at 15–16.) Salas asked Gault to complete an employment application. (Doc. 81-1 at 18.) He also explained Schwab would conduct a background check and failure to accurately provide her employment history could affect her eligibility for the position. (Doc. 81-1 at 18–19.) Gault completed her application on October 23, 2022 and Cisive—a third-party background screening vendor hired by Schwab—notified Schwab it had started Gault's background check. (Doc. 81-1 at 21; Doc. 85-2 at 7.)

Gault did not provide her complete employment history for the past ten years on the application as requested. (Doc. 81-2 at 23–24.) She also did not provide truthful information regarding her past terminations, only disclosing the Groupon one. (Doc. 81-2 at 22–24.) On October 24, 2022, Schwab emailed Gault to request additional information about her employment with Groupon. (Doc. 85-2 at 8.) The next day, Gault replied asking for "another link to complete [her] job history," noting she "deleted a bunch of jobs because [she] misread the screen" on her cellphone. (Doc. 85-2 at 8.) Schwab replied it did not have an additional link but asked she provide any additional job information via email. (Doc. 85-2 at 8.) The next day, Gault provided "corrections" to eleven different previous employment positions. (Doc. 85-2 at 8.) As she later testified, the reasons she gave for leaving some of those positions were inaccurate. (Doc. 81-2 at 28–31.) For example, Gault stated she left a position with GoHealth due to "medical" reasons. (Doc. 81-2 at 29.) But Gault admitted at her deposition that she was terminated "[f]or attendance" reasons caused by a medical condition. (Doc. 81-2 at 29–30.) It is therefore undisputed that Gault did not provide true and accurate information to Schwab during the application process.

At this point, Schwab still needed additional information from Gault regarding her Groupon termination and Salas called her on October 28, 2022 to discuss it. (Doc. 81-2

at 35.) During that call, Gault told Salas for the first time that Groupon had attempted to contest her unemployment benefits claim after her termination and disclosed she had been terminated on at least one other occasion that she omitted during her screening interview and on her employment application. (Doc. 81-2 at 48.) Gault sent another email to Schwab that day explaining she was terminated from Groupon "for violating the vacation policy that prohibited use and access of systems and email while on vacation" and "responded to a customer from [her] cell phone" to receive "credit for a sale."[1] (Doc. 85-2 at 30.)

Salas contacted the position's hiring managers to notify them of Gault's inconsistent statements about her employment history and prior terminations. (Doc. 81-2 at 48.) He informed them he failed to record Gault's Groupon termination in his interview notes but that the reasons for termination she provided in the screening interview did not match her later explanation during their October 28, 2022 conversation. (Doc. 85-2 at 3–4.) The hiring managers decided to rescind Gault's offer because of discrepancies in her employment history and failure to disclose all past terminations. (Doc. 81-2 at 49.)

On October 31, 2022, Salas informed Gault that Schwab was rescinding her conditional employment offer. (Doc. 81-2 at 49.) As of that date, Schwab had not received the background screening report from Cisive. (Doc. 81-2 at 49, 55.) Gault emailed Salas requesting contact information for "the legal counsel or team responsible for FOIA [sic] requests." (Doc. 85-2 at 16.) The next day, Salas emailed Cisive withdrawing its request for a background screening report. (Doc. 81-2 at 49, 55.)

On November 2, 2022, Gault emailed Salas she was "exercising [her] right under the FCRA to request all background information used to make this decision." (Doc. 85-2 at 18.) Salas forwarded Gault's emails to his manager, Monica Cauley. (Doc. 85-2 at 16–17.) Gault also emailed Debbie Graye, a Talent Acquisition Managing Director at

---

[1] Gault later explained in her deposition this reason was also not fully accurate. Gault had responded to a customer who had sought to end her relationship with Groupon and inadvertently sent the customer an email with the subject line "I hate you" or "something like that" intended for a different recipient. (Doc. 81-2 at 5–8, 32–34.)

Schwab requesting the Cisive report and FCRA notices. (Doc. 85-2 at 14–15.) Graye escalated this email to other Schwab employees, one of whom commented "[o]n the surface, it does sound like we may have missed a step or two related to the FCRA." (Doc. 85-2 at 23.)

Cisive completed its background check on November 2, 2022 and sent it to Schwab. (Doc. 85-2 at 26–27.) On November 4, 2022, another Schwab Talent Acquisition Managing Director emailed Gault the Cisive report and advised she contact Cisive directly if she had any questions "or would like to contest any of the information included in the report." (Doc. 85-2 at 26.) Gault never contested the report with Cisive because she later determined it was accurate. (Doc. 81-2 at 41.)

Gault believed Schwab's offer rescission was motivated by racial discrimination and filed a discrimination charge against Schwab with the Equal Employment Opportunity Commission (EEOC). (Doc. 26 at 5.) She received a right to sue notice on February 6, 2023. (Doc. 28-1 at 11.) She later filed this complaint alleging employment discrimination under Title VII and ACRA and negligent noncompliance under FCRA for failure to "properly investigate," "address conflicting background information," and provide her with a "reasonable opportunity to dispute and correct any inaccuracies." (Doc. 26-1 at 5–6.)

**II.     Legal Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).

### III. FCRA Standing

Gault alleges Schwab failed to provide her with a reasonable opportunity to dispute and correct any inaccuracies in Cisive's background check in violation of FCRA. Gault does not have standing to bring this claim.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted). A plaintiff seeking damages for violating a statute like FCRA "must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation" to meet Article III standing requirements. *Dutta v. State Farm Mut. Auto. Ins. Co*., 895 F.3d 1166, 1172 (9th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("A violation of one of the FCRA's procedural requirements may result in no harm.")). To allege such a concrete injury, Gault must show the relevant statutory provisions "were established to protect [her] concrete interests (as opposed to purely procedural rights)," and if they were, that the "specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc*., 867 F.3d 1108, 1113 (9th Cir. 2017).[2]

---

[2] Gault misstates the standards in both *Spokeo* and *Robins*. It is unclear if she did so intentionally but these cases do not contain the quotations she says they do. *Compare, e.g.*, Doc. 85 at 10 ("The Supreme Court has held that 'a violation of one of the FCRA's procedural requirements may result in concrete harm,' particularly where 'the procedural right is "substantive" in the sense that it protects against the risk of real harm.' *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341-42 (2016)") *with Spokeo*, 578 U.S. at 342 ("A violation

FCRA requires any employer "using a consumer report for employment purposes" provide the applicant with a copy of the report and a written description of the applicant's rights under FCRA "before taking any adverse action based in whole or in part on the report." 15 U.S.C. § 1681b(b)(3)(A). Gault does not argue Cisive disseminated inaccurate information or even that Schwab used anything Cisive provided, only that Schwab's actions were "a complete denial of her statutory right to respond before adverse action was taken." (Doc. 85 at 11.) The Ninth Circuit considered this exact issue in *Dutta*. 895 F.3d 1166. There, a job applicant alleged he was denied employment because of a credit report obtained by a prospective employer and was refused statutory notice or the opportunity to challenge the report's alleged inaccuracies. *Id*. at 1170. Because the information the prospective employer relied on was accurately reported and none of the information challenged in the report would have changed the employment decision, the Ninth Circuit held there was no concrete injury. *Id*. at 1175–76.

Just as in *Dutta*, Gault has failed to establish an injury-in-fact. Even accepting she suffered a procedural violation, she has not alleged any information in the consumer report was inaccurate or that she attempted to correct or dispute the information contained in the report. To the contrary, Gault testified she declined to appeal the report's contents with Cisive because it was accurate. (Doc. 81-2 at 41.) In these circumstances, Gault did not suffer a harm sufficient to establish standing.

Finally, Gault argues she was denied her "statutory right to respond before adverse action was taken." (Doc. 85 at 11.) Gault appears to argue she should have been provided the opportunity to dispute the "inconsistencies" in her employment history directly with Schwab. (Doc. 85 at 11.) Although Gault may dispute information with a consumer reporting agency and ask it to notify employers that such information has been deleted, FCRA does not grant her the right to dispute this information directly with the prospective employer. *Walker v. Fred Meyer, Inc*., 953 F.3d 1082, 1093–94 (9th Cir. 2020).

of one of the FCRA's procedural requirements may result in no harm.").

Because Gault cannot show a concrete injury-in-fact, she does not have standing to allege her FCRA claim.

### IV.     FCRA Negligent Non-Compliance

Even assuming Gault had standing, she could not establish the elements of her FCRA claim. Where an employer "us[es] a consumer report for employment purposes," FCRA provides job applicants with the opportunity to contest information in a consumer report prior to an adverse employment decision where the decision is "based in whole or in part on the report." 15 U.S.C. § 1681b(b)(3)(A).

Gault argues the statute applies because Schwab "obtained" a consumer report and therefore necessarily based its employment decision on the report. (Doc. 85 at 12.) Yet again, she appears to fabricate case law when she asserts the Ninth Circuit held "a consumer report is 'used' when it is obtained or relied upon in any part of the employment decision." (Doc. 85 at 12.) The court has been unable to locate that quote anywhere in the case Gault cites for it. But regardless, the undisputed evidence establishes Gault's theory is flawed.

There is no dispute of material fact that Schwab did not base its decision to rescind her offer "in whole or in part on the report." The Cisive report was not even completed until after Schwab had rescinded Gault's employment offer. (Doc. 81-2 at 49.) Accordingly, Gault's FCRA claim fails.

### V.     Title VII and ACRA

Finally, Gault argues the offer rescission violated Title VII and ACRA. To state a prima facie claim for discrimination under both statutes, Gault must demonstrate (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was rejected despite her qualifications; and (4) similarly-situated applicants not in her protected class received more favorable treatment. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742–43 (9th Cir. 2004).

Gault cannot make this minimal prima facie showing because she cannot show she was qualified for the position or that similarly-situated applicants outside her protected

class were treated more favorably. *Cooper v. Window Rock Unified Sch. Dist.*, No. CV-20-08346-PCT-DJH, 2023 WL 2463765, at *6–7 (D. Ariz. Mar. 10, 2023) (plaintiff must allege comparators to show employer "treated [her] differently than similarly situated, non-African American employees"), *aff'd*, No. 23-15527, 2024 WL 575138 (9th Cir. Feb. 13, 2024). Gault was not qualified for the position because she failed to disclose all instances of termination in her employment application and screening interview even though she was told doing so could affect her eligibility (Doc. 81-2 at 14, 19, 22–24, 48). *See Valenzuela v. Cochise Cnty.*, No. CV-12-00463-TUC-CKJ, 2014 WL 2584824, at *7 (D. Ariz. June 10, 2014) (finding plaintiff failed to make prima facie discrimination case where she did not truthfully complete an employment application, rendering her unqualified).

Additionally, no facts in the record show similarly-situated applicants were treated more favorably. Schwab rescinded employment offers of two other applicants belonging to different protected classes for making inaccurate and inconsistent statements regarding their employment histories and prior terminations. (Doc. 81-2 at 49.) Gault testified she is unaware of any individuals who were treated more favorably and admits that of the sample comparator data she received, three individuals who were hired had "pristine records" and three individuals whose offers were rescinded had "known terminations." (Doc. 81-2 at 37–38; Doc. 85 at 16.)

Approximately three weeks after filing her opposition to the motion for summary judgment, Gault moved to supplement the record under Fed. R. Civ. P. 56(e) and Loc. R. Civ. 56.1(a) with "comparator records." (Doc. 87 at 1.) The court has discretion to allow a party to "properly support or address [a] fact." Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact . . . the court may: give an opportunity to properly support or address the fact."). Gault does not explain what the comparator records are or, as Schwab notes, why she did not attach them to her opposition. (Doc. 88 at 2–3.) In fact, she notes they "merely formalize[] and clarif[y] records already disclosed during discovery" that she "already referenced" in her opposition. (Doc. 87 at 2.) It appears

Gault was improperly attempting to file these records as a sur-reply to Schwab's reply, which noted "the undisputed record shows that Schwab treated applicants consistently." (Doc. 87 at 2 (quoting (Doc. 89 at 9).[3]) But these documents do not "directly rebut [Schwab's] assertion" as she claims (Doc. 87 at 2), and Gault does not argue they are significant in any other way. The court grants Gault's motion in its discretion but these documents have no bearing on its determination because they still do not show similarly-situated individuals were treated differently.

Gault attempts to create a material dispute of fact by arguing "Schwab has not produced evidence that the hired comparators underwent similar scrutiny or that their disclosures were mischaracterized as dishonest or deceptive." (Doc. 85 at 16.) But Gault bears the burden of at least establishing a dispute of fact whether similarly-situated individuals were treated differently.[4] It is not Schwab's burden to make a prima facie case that similarly-situated individuals were not treated differently in every way. *Bodett*, 366 F.3d at 743. Discovery has closed and there is no record evidence showing Schwab treated similarly-situated individuals differently.

Finally, even assuming Gault made a prima facie case, Schwab has provided evidence of a legitimate nondiscriminatory reason—the conflicting and incomplete employment and termination history she provided—for rescinding her offer. (Doc. 81 at 14.) The burden therefore returns to Gault to show Schwab's rationale was pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973). Gault argues

---

[3] Gault's motion incorrectly identified Schwab's reply as "Doc. 89."

[4] Nearly a month after Schwab filed its motion for summary judgment and nearly three months after discovery closed, Gault lodged an objection to Schwab's comparator production. (Doc. 82 at 1.) If Gault had a discovery dispute necessitating the court's review that could not be resolved "despite sincere efforts" with Schwab, she was required to file a joint statement as the court previously ordered. (Doc. 52 at 5–6.) She did not do so. Moreover, Gault made her informal request for supplementation to Schwab's counsel (Doc. 82 at 2, Doc. 82-1 at 27) nearly two months after the discovery period closed. *See Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Courts set [discovery] schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to."). Gault has not provided any reason to excuse her delay in seeking additional discovery or raising a discovery dispute using the court's prescribed procedures in a timely manner. Separately, she claims to reserve the right to object to Schwab's use of undisclosed comparators in its motion for summary judgment but does not identify anywhere Schwab did so. (Doc. 82 at 3.)

1  Schwab's rationale was pretextual because it provided "conflicting explanations for the
2  rescission" and "failed to follow its own procedures." (Doc. 85 at 15.) Gault has not
3  provided evidence supporting either of these reasons.
4      Gault cites Salas's failure to initially record her Groupon termination as the basis
5  for Schwab's "conflicting explanations." (Doc. 85 at 15.) But in fact, after Schwab's
6  internal background investigations team flagged Gault's Groupon termination, Salas
7  noted he "neglected" to record Gault's disclosure and apparently updated his interview
8  notes to reflect it. (Doc. 85-2 at 3–4, 13.) It was only after Salas contacted Gault to
9  discuss the Groupon termination and found the answers she gave conflicted with her
10 interview responses (while also telling him about another previously-undisclosed
11 termination) that Schwab cited Gault's conflicting statements as a reason for rescinding.
12 (Doc. 85-2 at 3–4.) This is not a conflicting explanation in any material way.
13     Second, Gault argues Schwab "failed to follow its own procedures" because its
14 "Hiring Job Aid policy mandates that applicants be given an opportunity to clarify or
15 dispute background issues before adverse action is taken." (Doc. 85 at 15.) But neither
16 the document she incorrectly cites to support this argument (Doc. 85-1 at 1; Doc. 85-2
17 at 37–38) nor Schwab's actual hiring policies (Doc. 85-2 at 29) show that Schwab
18 requires applicants be given "an opportunity to clarify or dispute background issues
19 before adverse action is taken." (*Cf.* Doc. 85-2 at 29 (noting some situations "may
20 warrant a 5-business day window for the candidate to dispute the Background Check").)
21     Gault cannot make a prima facie case under Title VII or ACRA and does not
22 provide evidence showing the reasons for rescinding her offer were pretextual. Therefore,
23 her claims fail.
24 /
25 /
26 /
27 /
28 /

Accordingly,

**IT IS ORDERED** Gault's motion to supplement the record is **GRANTED**. (Doc. 87.)

**IT IS ORDERED** Schwab's motion for summary judgment (Doc. 81) is **GRANTED**. The Clerk of Court is directed to enter a judgment in favor of Schwab and close this case.

Dated this 4th day of August, 2025.

Honorable Krissa M. Lanham
United States District Judge